HAMILTON ET AL., EXECUTORS, *v.* TONER.

[No. 1,988. Filed April 9, 1897.]

BANKS AND BANKING.—*Death of Depositor.—Fraudulent Concealment of Deposit.*—A banker with whom a deposit is made is not guilty of such fraud as will make him liable in damages to the sole heir of depositor by inquiring of her after the death of depositor concerning the condition in which the business affairs of deceased were left, saying nothing about the deposit, and with knowledge of the heir's ignorance of such deposit making a demand upon her for a claim against such depositor's estate and accepting her check on another bank in payment thereof, the bank having paid the amount of the deposit upon demand and prior to the commencement of the action for damages.

From the Johnson Circuit Court. *Reversed.*

*Adams & Carter*, for appellants.

*J. B. McFadden* and *Miller & Barnett*, for appellee.

COMSTOCK, C. J.—This action was brought against appellants as the personal representatives of the estate of Samuel Hamilton, deceased, for the recovery of damages which appellee claims to have sustained by reason of the alleged wrongful conduct of the decedent toward her with reference to certain money which was deposited with said decedent by one George C. Thatcher.

The complaint is, in substance, as follows, to-wit: In January, 1885, George C. Thatcher deposited with one Samuel Hamilton, who was at the time the owner of a bank and engaged in the banking business, $915.00; that afterwards, in said month, said Thatcher died intestate, unmarried, and leaving the plaintiff as his sole heir at law; that no letters of administration have ever been granted on his said estate; that within a few days after the death of said Thatcher she made diligent search for all books and papers belonging to said estate in all places where said deceased, while in life, was in the habit of keeping the same, or where he was likely so to do, and she made careful examination of all she found; but that she neither found nor learned anything whatever that the said Thatcher had any money deposited in said bank, or that said Hamilton was in any way indebted to said Thatcher's estate; that within a short time after the death of said Thatcher, she caused to be published over her own signature in the Shelbyville Democrat, a newspaper of general circulation, printed and published at said city, a notice, asking all persons having claims against said estate to present them for payment, and that all persons knowing themselves to be indebted to said estate should pay the same to her; that in default thereof the same would be placed in the hands of an attorney for collection; that at the time of the death of Thatcher she was wholly ignorant of the fact that

there had been any money belonging to said estate deposited in said bank, or in which said estate had any interest, or that Hamilton was in any manner indebted to said estate; of which fact said Hamilton at that time had full knowledge; that she did not ascertain said fact until in July, 1893, and long after the death of said Hamilton; that soon after the death of said Thatcher, said Hamilton asked her how he left his business affairs, how she was succeeding in collecting the claims due said estate, and, for the purpose of ascertaining whether plaintiff had any knowledge of said money, he asked her if she was certain that she had possession of all books and papers belonging to said Thatcher's estate; that he did not then nor at any time inform her or intimate that he had or ever had any money deposited in his bank in which Thatcher had any interest; but that he wrongfully concealed said fact from her; that she learned of said deposit from a source wholly outside said bank or said executors, in July, 1893; that in March, 1892, the said Hamilton demanded of her the payment of a claim of $425.19 in favor of himself and against plaintiff as the only surviving heir at law of the said Thatcher, he knowing that she was the only heir at law of the said estate and that no letters of administration had ever been issued thereon; for which she executed to the said Hamilton her check on the First National Bank of Shelbyville in payment thereof, and which was by said bank paid to said Hamilton; that from the 26th day of January, 1885, until the —— day of May, 1892, said Hamilton wrongfully converted said money to his own use, knowing that plaintiff was ignorant of the fact that it had been deposited in his bank, and he wrongfully concealed the same from her; that during that time the use of said money had been worth to her 8 per cent. per annum; that during all that time

said Hamilton had drawn interest on the same in excess of that amount; that prior to 1890 she had paid the debts due from said Thatcher or his estate; that upon learning that said sum had been deposited in said bank, she demanded payment of the executors of said Hamilton's estate of said money, whereupon said executors paid to her on account of said deposit the amount of the principal of said sum, $915.00, but refused to pay her any interest thereon for the use of said money, whereby she has been damaged in the sum of $670.00 for which she demands judgment.

A demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action was overruled and exceptions taken. A trial had, resulting in a verdict and judgment for appellee for $450.00. A motion for a new trial was made, overruled and exceptions taken. The errors assigned are, first, the overruling appellant's demurrer to the complaint; second, overruling motion for a new trial.

When Thatcher deposited his money with Hamilton, the relation of debtor and creditor was at once created. The money became the property of Hamilton. *McLain* v. *Wallace, Rec.*, 103 Ind. 562; *Harrison, Rec.*, v. *Wright*, 100 Ind. 515. It was payable to Thatcher at the bank of the latter upon written order, during business hours, unless a different agreement was made as to its payment.

A banker is not bound to seek his depositor as is the ordinary debtor to seek his creditor. He is not bound to pay upon an oral order. *McEwen* v. *Davis*, 39 Ind. 109.

Thatcher died without having made any demand for this money. After his death, appellee as his sole legal heir demanded and received of appellants $915.00, the full amount of said deposit. Was not this a complete performance of the contract entered into between

Hamilton and Thatcher? Hamilton did not contract to pay the identical money deposited with him, but to hold himself in readiness to pay upon proper demand an amount equal to that deposited. This contract could not be changed but by the consent of both parties. Hamilton and Thatcher being dead, the appellants and appellee are their respective representatives. Wherein are the rights of appellee greater or different than that of Thatcher? It cannot be contended that Thatcher could have maintained this suit unless he had demanded and been refused payment. Had Hamilton refused the payment, the remedy of Thatcher would have been by suit on contract to recover damages for the breach. He could not have been sued for conversion, for the money became his own.

Conversion is the wrongful exercise of dominion over property in denial of the owner's rights.

If Thatcher had lived without demanding payment to the time when appellee demanded the money, he could not, had payment been refused, have maintained a suit for more than the amount of his deposit with interest thereon from the date of the refusal. Had he forgotten that he had deposited the money with Hamilton, the obligation of Hamilton would not have been affected by such lapse of memory, because their relations were those of contract and their respective rights and liabilities were fixed by law.

When one does nothing but what the law authorizes him to do, he commits no legal wrong. *Habig* v. *Dodge*, 127 Ind. 37.

The money being Hamilton's he could not become a wrongdoer by using it, for he was only using his own. He could commit no tort by refusing to pay it, for in so doing he would merely violate his contract, for which the remedy would be a suit on contract, the measure of damages being the amount of the deposit

and interest thereon from the time of the refusal to pay.

"There are also, in certain relations, duties imposed by law, a failure to perform which is regarded as a tort, though the relations themselves may be formed by contract covering the same ground." Cooley on Torts, pages 105, 106.

"At the foundation of every tort must lie some violation of a legal duty, and therefore, some unlawful act or omission." Cooley on Torts, p. 104, note and authorities there cited.

Hamilton held the money under a contract entered into without any fraud or fraudulent representations. No trust relations existed between the parties to the contract. None, therefore, could exist between Hamilton and appellee.

Hamilton was simply a debtor from whom a debt was payable upon demand.

Appellee as sole heir at law of Thatcher demanded and received the $915.00 by virtue alone of the contract made by Thatcher and Hamilton. She now seeks in tort to enforce a claim dependent upon, and a mere incident of said contract, from which we think it cannot, in law, be separated so as to maintain an action different in kind from that through which the principal might have been recovered.

In discussing this question, Mr. Pomeroy, in his Remedies and Remedial Rights, section 558, says:

"By far the most important distinction directly connected with this doctrine is that which subsists between causes of action *ex contractu* and those *ex delicto*. It is settled by an almost unanimous series of decisions in various states, that if a complaint or petition in terms alleges a cause of action *ex delicto*, for fraud, conversion, or any other kind of tort, and the proof establishes a breach of contract express or implied, no

recovery can be had, and the action must be dismissed, even though by disregarding the averments of tort, and treating them as surplusage, there might be left remaining the necessary and sufficient allegations, if they stood alone, to show a liability upon the contract." See *Cincinnati, etc., R. R. Co:* v. *Harris*, 61 Ind. 290.

Hamilton contracted to pay Thatcher $915.00 on demand. Appellee claims in this action, as interest and damages, the amount which said sum would have produced. If appellee is entitled to recover on her claim in this action, it must be because of the failure to pay the $915.00 according to the terms of the contract entered into by Hamilton and Thatcher when the deposit was made. The $915.00 could not have been collected in an action in tort, and, therefore, an incident to or a claim arising in consequence of the failure to pay the principal cannot be collected in tort. *Bennett* v. *McIntire*, 121 Ind. 231, 6 L. R. A. 736.

Does the complaint state facts sufficient to make it good as a complaint in tort for the fraud of Hamilton?

In charging fraud it is not sufficient to say that a thing was fraudulently done, nor "to heap up epithets." The facts constituting the fraud must be set out. *Curry* v. *Keyser*, 30 Ind. 214; *Ham* v. *Greve*, 34 Ind. 18.

These facts are to be considered upon the proposition that the relation of debtor and creditor alone existed between Hamilton and Thatcher, and that therefore the relation of trust does not exist between Hamilton and appellee, as heretofore stated. *McLain* v. *Wallace, Rec., supra; Harrison, Rec.,* v. *Wright, supra.*

The facts averred which aspire to show fraud are, that soon after the death of Thatcher, Hamilton

called upon appellee and asked her how he left his business affairs, how she was succeeding in collecting the claims due said estate, and for the purpose of ascertaining whether plaintiff had any knowledge of said money, asked her if she was certain that she had possession of all books and papers belonging to said Thatcher's estate; that he did not at any time inform her that he ever had any money deposited in his bank in which Thatcher had any interest, but that he wrongfully concealed said fund from her; that in March, 1893, while said money was on deposit in his bank, Hamilton demanded of her the payment of a claim of $425.19 in favor of himself, and against plaintiff, as the only surviving heir at law of said estate, he knowing that she was the only heir at law of said estate, and that no letters of administration had ever been issued thereon; that she executed to Hamilton her check on the First National Bank of Shelbyville in payment of said claim on which he received the money; that Hamilton knew that she was ignorant that said money had been deposited in his bank. These are the only acts or utterances of Hamilton upon which can be predicated a charge of fraud.

The death of Thatcher, as we have heretofore stated, did not change the obligation of Hamilton, but, if it did, and made the money due at once to appellee, his simple failure to pay could not be said to be a fraud. It is not charged that in his conversation with her he made any misrepresentation. There was no deceit in the inquiry as to what she was doing and how she was succeeding in collecting the claims in favor of Thatcher's estate. It was certainly not a fraud to present to, and ask payment of appellee of a valid claim, nor was it a fraud to accept in payment a check upon a fund on deposit in a bank other than his own. It is true, as stated in the able and ingenious brief,

of appellee's counsel, that a bank may apply money held by it on general deposit to the payment of a debt due it from the depositor, but the bank is not required to do so.  See *Second Nat. Bank, etc.*, v. *Hill*, 76 Ind. 223; *Scott* v. *Shirk*, 60 Ind. 160.

He might, without submitting himself to the charge of improper motives, assume, under the circumstances, that appellee was in possession of the bank book of the deceased, that she knew of the deposit, and that she elected to draw upon another fund.  This act took place seven years after the death of Thatcher—years after the conversion is charged.

There is no allegation in the complaint that she was deceived by, or relied upon anything that Hamilton did or said.  We think the complaint should have contained these averments.  *Hagee* v. *Grossman*, 31 Ind. 223; *Hess* v. *Young*, 59 Ind. 379; Bigelow on Fraud, p. 3.

Hamilton holding the money by virtue of a contract with Thatcher, which did not obligate him to pay it until demand was made by someone having authority, he could not be charged with fraud for doing what, under the contract, he had a right to do.

It is said in *Coppage, Admr.*, v. *Gregg*, 127 Ind. 359: "It is sufficient to say that, eliminating from the pleading the allegations charging fraud and fraudulent intent, and looking at the facts themselves, it does not appear that either of the appellees did a single thing that the law prohibited them from doing, and, under such circumstances, it has been well said that 'Fraud cannot be predicated upon acts which the party charged has a right by law to do, nor upon the non-performance of acts which by law he is not bound to do, whatever may be his motive, design or purpose, either in doing or not doing the acts complained of.'"

*Reiter* v. *Cumback*, 1 Ind. App. 41; *Franklin Ins. Co.* v. *Humphrey*, 65 Ind. 549, 32 Am. Rep. 78.

For the foregoing reasons, and upon these authorities, we are of the opinion that the complaint is not good in tort for the fraud of Hamilton.

Had fiduciary relations existed between Hamilton and Thatcher, the obligations of Hamilton would have been radically different and he would then have owed a duty to appellee not imposed by the existing relations. It would then have been his duty to have informed her of all facts known to him concerning business with which he was connected and in which she had a pecuniary interest.

The second assignment of error is the overruling of appellant's motion for a new trial. This motion embraces forty-six reasons, chiefly relating to instructions given and refused.

Believing as we do that the learned court who presided at the trial below erred in overruling the demurrer to the complaint, and that the errors complained of in the second assignment of errors are not likely to occur upon a second trial, we do not deem it necessary to pass upon all of them.

The 43d reason is "The verdict is not sustained by sufficient evidence."

If the complaint is good in tort, on the theory that Hamilton was guilty of a wrong, then to sustain the verdict the evidence should show that he was guilty of the alleged acts constituting the wrong. If there is no evidence in support of such allegations, the verdict would be contrary to the evidence.

There is no evidence that Hamilton ever had any conversation, nor that he ever in person had any communication with appellee after her brother's death. There is no evidence that he ever read in any paper the notice which the complaint alleges she caused to

Hamilton *et al.*, Executors, *v.* Toner.

be published in a Shelbyville newspaper in reference to her brother's estate. There is no evidence that he knew that Thatcher died intestate. There is no evidence that he said anything or did anything to prevent her getting the $915.00.

The only evidence showing any business transaction between Hamilton and appellee is to the effect that Thatcher had conveyed to Hamilton by warranty deed a piece of real estate, the title to which had failed; that he had been compelled to expend money in perfecting his title, and that he had agreed to take from the representative of those who had warranted the title to him what it had cost him to purchase the outstanding title, and that a short time before his death he had sent his agent to appellee and settled with her, as the heir at law of Thatcher, on that basis, and in so doing received a check on a bank in Shelbyville other than his own, mentioned in the complaint.

We have examined the authorities cited in the able brief of counsel for appellee upon this and the other branches of this case; they show there may be circumstances under which the silence of a party may amount to fraud. We do not think that they apply to the facts in this case. It is in evidence that a bank book had been given Thatcher showing his account. There is no evidence that Hamilton knew that appellee did not have it in her possession and therefore did not know of this deposit. Under the circumstances his acceptance of a check on the First National Bank of Shelbyville, and his silence as to the deposit in his bank, against which appellee might have checked, was not a fraud.

The judgment is reversed and the cause remanded with instructions to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.